MAYOR AND COUNCIL OF THE TOWN OF BAYOU SARA *v.* J. B. HARPER & SON.

Where money raised by contributions to relieve the sufferers from a destructive fire was loaned out by the committee to the sufferers without interest, for a certain period, they giving their notes payable to the holder—*Held:* That the makers of the notes having made a special contract with the committee, could not plead want of consideration, and not being owners of the fund themselves, were precluded from inquiring how the committee obtained the money.

APPEAL from the District Court of the Parish of W. Feliciana, *Haralson, J. Collins & Leake,* for plaintiffs and appellants. *S. J. Powell,* for defendants.

MERRICK, C. J. This suit is upon three promissory notes dated July 12th, 1855, for $166 66⅔ each, payable, in one, two and three years respectively, at the office of the Treasurer of the town of Bayou Sara, and making the aggregate of $500.

The answer of defendants denies the consideration of the notes, and sets out the circumstances under which they were given, and further alleges, that if there were a consideration, it is unlawful, contrary to public and good order, and of no binding effect in law whatever.

The judgment of the lower court was in favor of the defendants.

The principal facts of the case are these : A destructive fire occurred in the town of Bayou Sara, by which many of the inhabitants sustained severe losses. Among others, *C. C. S. Farrar,* of the vicinity of Bayou Sara, interested himself on behalf of the sufferers. He visited this city, and through his own agency and some commercial houses of New Orleans, he collected about six thousand dollars for the relief of those who had sustained losses by the fire. The money was delivered to *Mr. Farrar* by the donors and those who had aided in procuring donations, without any instructions as to the manner of its distribution. Some of the donors state that their intention was to give whatever they subscribed unconditionally to those needing assistance. Doubtless, this was the intention of all.

Some funds were also forwarded to *R. Mumford,* who distributed the same unconditionally.

On *C. C. S. Farrar's* return to Bayou Sara, there was some discussion as to the plan of distribution among those needing assistance. It seems from his testimony, that many of the sufferers would not receive aid in this manner. Some proposed, as the most equitable mode of distribution, to pay off the debts of the town. *Mr. Farrar* determined to send the money back to New Orleans to the donors ; but finally it was determined by the committee associated with him, and of which he was chairman, to loan out the fund to those most in need in sums large enough to be of some service to them, the maximum being fixed at $500. The recipients were to make their notes payable to their own order at the office of the corporation, in three annual instalments. When the notes should be collected, the money was in the same manner from year to year to be loaned to other sufferers, until all who desired it had received relief. It would also seem from the testimony, that a plan of final distribution of the fund was agreed upon by the committee. What that plan was, is not disclosed by the testimony.

30

BAYOU SARA
*v.*
HARPER.

The defendants were druggists in Bayou Sara, and lost by the fire a frame drug store, with a considerable portion of their merchandize.

It does not appear, whether they were or were not insured. They now occupy a brick slate roof drug store on the same ground occupied by their former store, and have a valuable stock of drugs and medicines in the same.

The committee determined, after they had made the collections, to aid the defendants by a loan (in accordance with their plan) of $500.

It seems by the testimony, that the plan was explained to the defendants, and that they agreed to the same without objection. Thereupon, the money was paid over to them, and they gave their three promissory notes above described, it being understood that the notes would be collected when they matured by the corporation, to which they were to be delivered.

Considering money as commanding eight per cent. interest, the contract as made was equivalent to a gift of eighty dollars to defendants. Probably, under the peculiar circumstances, it was more beneficial than a donation of eighty dollars would, have been.

None of the persons receiving aid in this way have paid their notes, and this appears to be a test case to determine whether they are liable.

The case must be determined by legal principles, and not by any supposed natural equity arising from the beneficent intentions of a part or the whole of the subscribers to the fund. The money was given to be distributed through the agency of the committee, to the sufferers by the fire. No particular individual was in the mind of any of the donors, nor was any sum set apart to any one of the sufferers. When, therefore, *Mr. Farrar* arrived at Bayou Sara, there were no persons who had any *legal* claims on him, or the committee, for any part of the money. There could have been no *stipulation pour autrui*, because no one was named, and it could not be known what would be equitable even, until it had been ascertained how much money had been collected, and how many persons there were to share the bounty. When, therefore, the committee proposed to *lend Messrs. Harper & Son* $500, they were not legally bound to them in the sum of $500, nor any other sum. Neither did they undertake *to pay* a natural obligation. They merely loaned to them a sum of money ; and because they received the gratuity of the interest in this loan, it by no means follows that they were entitled to the whole loan, principal as well as interest. Although the loss of *Messrs. Harper & Son* was considerable, there is nothing to show that *in foro conscientiæ* the defendants were entitled to anything more than the interest which they were to receive. There is no reason, therefore, to hold that the defendants, who have received five hundred dollars, gave their notes for that sum without consideration.

But it might be said, if *Harper & Son* had no legal right to the fund in the hands of the committee, that neither the committee nor the town of Bayou Sara have any interest in the notes which they attempt to collect, for the money was placed in their hands by others to be given away absolutely, and not conditionally. The reply is, the defendants, who had no legal right to the fund, have bound themselves absolutely, by their promissory notes, to pay the same to the holder of the notes. They cannot say, therefore, that they are not legally. bound.

If the defendants did not intend to pay the notes, they ought not to have subscribed the same and delivered them to the committee. Having made a special contract with the committee, and not being owners of the fund themselves, they

are precluded from inquiring how the committee obtained the money.  See also   <span style="float:right">Bayou Sara<br>v.<br>Harper</span>
Urquhart v. Taylor, 5 M. R. 202 ; Gilman v. Horsley, 5 N. S. 662 ; Clampett v.
Newport, 8 An. 124; Banks v. Easton, 3 N. S. 291, and Shaw v. Thompson,
ibid 392.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment
of the lower court be avoided and reversed ; and it is here ordered, adjudged and
decreed, that the plaintiff do recover and have judgment against the defendants,
Harper & Son, in solido, for the sum of five hundred dollars, with legal interest
thereon (by equation) from the fifteenth day of July, 1857, until paid ; and it is
further ordered, that the defendants pay the costs of both courts.

LAND, J., absent.